UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PAUL J. McMANN                          :
                                        :
              v.                        :        C.A. No. 13-570ML
                                        :
CENTRAL FALLS DETENTION                 :
FACILITY CORPORATION                    :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

        Plaintiff Paul J. McMann filed a pro se Complaint against the Central Falls Detention

Facility Corporation ("CFDFC") and unidentified employees of the CFDFC.  (Document No. 1).

Along with his Complaint, Plaintiff also filed a Motion to Proceed In Forma Pauperis ("IFP")

(Document No. 3).  The IFP Motion and the Complaint have been referred to me for preliminary

screening under 28 U.S.C. §§ 1915(e)(2) and 1915A.  For the reasons stated below, I recommend

that Plaintiff's Motion to Proceed IFP be GRANTED but that Plaintiff be ORDERED to AMEND

his Complaint.

        **Facts**

        The following facts are gleaned from Plaintiff's Complaint and taken as true for purposes

of preliminary screening.  Plaintiff is a detainee who has been held at the Donald W. Wyatt

Detention Facility ("Wyatt"), which is operated by CFDFC, since August 4, 2011.  (Document No.

1, p. 1, ¶¶ 2, 4).  He was convicted by a jury of three counts of wire fraud on April 4, 2013, and he

is currently held in custody pending sentencing.  See United States v. McMann, No. 10-cr-10387-

RWZ (D. Mass.) (Document No. 1, p. 7; Document No. 152, p. 1).  While in custody, he also filed

a civil action in the United States District Court for the District of Massachusetts (See McMann v.

United States, No. 2012-cv-11872-PBS (D. Mass.)), in which he alleged that he has been punished without trial and that the Bail Reform Act is unconstitutional because it does not provide adequate safeguards to prevent lengthy pretrial detention.  (Document No. 1, p. 2, ¶ 6).  "As part of a public relations effort...to inform the public about the allegations in his civil action," Plaintiff has endeavored to write to members of the media in order to convince them to write a story on the case. Id. ¶ 7.  Plaintiff alleges that he does not have anyone outside Wyatt to assist him in this effort, id. ¶ 9; in order to combat this deficiency, he asked employees of the CFDFC to help him in obtaining contact information for various media outlets and personnel.  Id. p. 2-3, ¶ 10.  Specifically, Plaintiff requested Wyatt personnel to provide him with two to four new addresses at a time.  Id. p. 3, ¶ 11. Plaintiff alleges that he made these requests every few days and sometimes on a daily basis.  Id. Evidently, the CFDFC initially obliged Plaintiff's requests, but is unclear from the Complaint whether it was fully aware of the purpose for the requests at that time.

The landscape changed sometime in January 2013, however.  Id. ¶ 12.  Wyatt personnel instructed Plaintiff to refrain from using the typewriter at Wyatt to write to members of the media. Id.  The reason given for this restriction, according to Plaintiff, was that the CFDFC considered his communication to be "personal," and the typewriter was to be used only for "legal" correspondence. Id.  Plaintiff was informed that further use of the typewriter for personal use would result in disciplinary action.  Id. ¶ 13.  Plaintiff  wrote to the Deputy Warden of Wyatt and stated his position that, because the letters to the media concerned his confinement and the conditions thereof, they constituted privileged legal mail.  Id. ¶ 14.  Shortly thereafter, a counselor at Wyatt notified him that Wyatt personnel would no longer provide him with media contact information.  Id. ¶ 17.  Plaintiff also requested the contact information for all United States Senators, as he wished to write to them

about his civil suit and the constitutionality of the Bail Reform Act; the CFDFC refused to provide these addresses.  Id. p. 4, ¶¶ 18-19.  When Plaintiff approached the Warden about his problems, he told Plaintiff, "We are not your law clerks.  Get somebody else to do it."  Id. ¶¶ 20-21.  In addition, Plaintiff has been refused the use of a telephone directory, and Wyatt policy forbids inmate use of a word processor.  Id. p. 6, ¶¶ 43-45.

Additionally, after Wyatt personnel discovered that Plaintiff was complaining about Wyatt in his letters to media outlets, Wyatt officials told him to cease the practice of labeling his mail to the media as "Legal Mail," explaining that, if he failed to do so, he would be disciplined.  Id. p. 5, ¶ 30.  Plaintiff alleges that the CFDFC directed him to cease labeling his mail to the media as "Legal Mail" in order to retaliate against him and also in order to slow down his ability to communicate with the media.  Id. p. 5-6, ¶ 35.  According to Plaintiff, the CFDFC's distinction between "Legal Mail" and "Personal Mail" has a practical effect on the number of letters he can send to media outlets per week.  Id. p. 6, ¶ 39.  Plaintiff avers that indigent inmates like Plaintiff are permitted unlimited postage for "Legal Mail" after sixty days of indigency.  Id. ¶¶ 36-37.  By contrast, indigent inmates are only allowed three letters per week of "Personal Mail."  Id. ¶ 38.  Plaintiff alleges that the forced reclassification of his mail to the media from "Legal Mail" to "Personal Mail" has meant a reduction in the number of media outlets that Plaintiff can contact per week.  Id., ¶ 39.  Similarly, the CFDFC has a policy that prohibits indigent "Personal Mail" for which the CFDFC is paying the postage from weighing more than one ounce; Plaintiff's letters to the media, averaging about ten pages in length, often weighed more than one ounce.  Id. p. 7, ¶¶ 47-48. The CFDFC has refused to mail one of his letters – addressed to the New York Times – because of this weight issue.  Id. ¶ 49.

Separate and apart from the CFDFC's policies concerning the sending of physical mail, Plaintiff also takes umbrage with the CFDFC's prohibition on inmate and detainee access to email and the Internet.  See id. p. 4, ¶¶ 22-23.  Plaintiff alleges that, if he was able to access the Internet, he could look up the desired contact information without assistance from Wyatt personnel and could set up a blog to communicate his grievances to a wide public audience.  Id. ¶¶ 25-26.  In addition, some news outlets that Plaintiff wishes to contact only provide their email addresses, and not their mailing addresses.  Id. p. 4-5, ¶¶  27-29.

Plaintiff's Complaint does not specifically delineate counts or causes of action.  However, the primary thrust of the Complaint, viewing the Complaint literally and taking its allegations as true, is that the CFDFC has violated Plaintiff's First Amendment right to correspond with the media by reclassifying his mail to media outlets from "Legal Mail" to "Personal Mail" and that this reclassification also constitutes retaliation for engaging in protected First Amendment conduct. (See, e.g., Document No. 1, p. 6, ¶ 39 ("By changing the status of his correspondence to the media from "legal" to "personal," Plaintiff was limited in his ability to complain about the conditions of his confinement."); id. p. 5-6, ¶ 35 ("Plaintiff believes Defendant instructed him to not label his mail to the media as legal as retaliation and to slow down his ability to correspond with the media.")).[1]

---

[1]  In addition to challenging the constitutionality of the CFDFC's decision to reclassify his mail to the media from "Legal Mail" to "Personal Mail," Plaintiff also asserts that several other policies of the CFDFC run afoul of the First Amendment.  In particular, Plaintiff alleges that the CFDFC's refusal to allow him to access email, the Internet, a telephone directory and a word processor violate his First Amendment rights.  (See Document No. 1, p. 4-5, ¶¶ 22-23 and ¶¶ 25-29; id. p. 6, ¶¶ 43-45).  However, it is unclear from the Complaint whether Plaintiff is alleging that these challenged policies of the CFDFC unconstitutionally restrict the means by which Plaintiff may exercise his First Amendment right to correspond with the media or whether he is asserting independent First Amendment rights to access email, the Internet, a telephone directory and a word processor.  Because I find that Plaintiff's Complaint states at least two claims for relief and is not legally frivolous but that the Complaint should be amended to cure certain deficiencies, any assessment of whether these unclear claims pass muster under Section 1915A would be both premature and unnecessary at this time.

**Standard of Review**

Under Section 1915A(a), "[t]he court shall review,...as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Pursuant to this screening mandate, the Court must dismiss the complaint, or any portion thereof, if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Id. § 1915A(b). Section 1915(e)(2)(B) directs the court to dismiss, at any time, a proceeding in which the plaintiff is proceeding in forma pauperis on the same grounds specified in Section 1915A(b). See 28 U.S.C. § 1915(e)(2)(B); Chase v. Chafee, C.A. No. 11-586ML, 2011 WL 6826504, *1 (D.R.I. Dec. 9, 2011).

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). "[A] court may dismiss a claim as factually frivolous [under § 1915] only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" Id. p. 32-33 (quoting Neitzke, 490 U.S. at 325, 327, 328) (internal citations omitted). A complaint is legally frivolous when "it presents a claim based on an 'indisputably meritless legal theory.'" Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991) (per curiam) (quoting Neitzke, 490 U.S. at 327). "A complaint is malicious when it 'duplicates allegations of another [ ] federal lawsuit by the same plaintiff.'" Daley v. U.S. Dist. Court, Dist. of Del., 629 F. Supp. 2d 357, 359-360 (D. Del. 2009) (quoting Pittman v. Moore, 980 F.2d 994, 995 (5th Cir. 1993)); see also Lindell v. McCallum, 352 F.3d 1107, 1109 (7th Cir. 2003) ("'Malicious[ness]' in [the Sections 1915(e)(2) and 1915A] context...is more usefully construed as intended to harass.").

-5-

"To determine if the complaint should be dismissed for failing to state a claim, the screener must determine whether the allegations, construed liberally, 'contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" <u>Machado v. Weare Police Dep't.</u>, 494 F. App'x 102, 105 (1st Cir. 2012) (<u>quoting</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)); <u>see also</u> <u>Starr v. Knierman</u>, 474 F. App'x 785, 785 (1st Cir. 2012); <u>Lebron v. Naylor</u>, C.A. No. 12-688ML, 2012 WL 6600296, *1 (D.R.I. Dec. 17, 2012) ("The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2) and 1915A is identical to that used when ruling on a Rule 12(b)(6) motion."); <u>Chase</u>, 2011 WL 6826504, *2 (same); <u>Hodge v. Murphy</u>, 808 F. Supp. 2d 405, 408 (D.R.I. 2011) (same).

**Analysis**

The Complaint cannot be said to be "malicious" under Sections 1915(e)(2)(B)(i) and 1915A(b)(1), as it neither duplicates allegations of another federal lawsuit by Plaintiff nor evidences any intent to harass. Additionally, the allegations in the Complaint are not factually frivolous because they do not rise to the level of clearly baseless, fanciful, fantastic or delusional. Therefore, the focus of the screening inquiry must be whether the Complaint is legally frivolous or fails to state a claim upon which relief may be granted.

**A.     The Complaint is Neither Legally Frivolous Nor Fails to State a Claim**

Plaintiff's Complaint does not state the legal foundation upon which his claims are based. However, it appears most likely that Plaintiff intended to bring this action under either 42 U.S.C. § 1983 or <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 392-396 (1971). Regardless of the particular legal footing, the allegations are sufficient to state a claim

upon which relief may be granted as they are not based on an indisputably meritless legal theory. Accordingly, dismissal of the Complaint is not proper at this early screening stage.

To prevail in a Section 1983 action, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law' and that 'the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" Freeman v. Town of Hudson, 714 F.3d 29, 37 (1st Cir. 2013) (quoting Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997)); see also Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54-55 (1st Cir. 2013).   Similarly, "[a] claimant who seeks relief under Bivens must prove the violation of a constitutional right by a federal agent acting under color of federal law." DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008). It is an open question in this circuit "whether Bivens extends to cases asserting a violation of First Amendment rights or retaliation for the exercise of those rights." Air Sunshine, Inc. v. Carl, 663 F.3d 27, 35 (1st Cir. 2011).

In this case, Plaintiff's Complaint sufficiently alleges deprivation of a constitutional right – namely, the First Amendment right to communicate with the media. See Nolan v. Fitzpatrick, 451 F.2d 545, 547 (1st Cir. 1971) (holding that prisoners "retain[ ] the [First Amendment] right to send letters to the press concerning prison matters"); see also 60 Am. Jur. 2d Penal and Correctional Institutions § 58 ("A prison's total ban on prisoner letters to the news media concerning prison affairs violates First Amendment freedom of speech guarantees."). Additionally, there is sufficient authority in this District for the position that Wyatt employees are either acting under state or federal law. See Lacedra v. Donald W. Wyatt Det. Facility, 334 F. Supp. 2d 114, 136-42 (D.R.I. 2004) (Lagueux, J.) (Wyatt employees are acting under state law, not federal law); Sarro v. Cornell Corr., Inc., 248 F. Supp. 2d 52, 58-61 (D.R.I. 2003) (Torres, J.) (Wyatt employees are acting under federal

law, not state law).  Therefore, the allegations in Plaintiff's <u>pro se</u> Complaint appear to sufficiently state a Section 1983 claim for violation of Plaintiff's First Amendment rights, and it is at least an open question whether <u>Bivens</u> is available in this First Amendment context.

Additionally, "[c]laims of retaliation for the exercise of First Amendment rights are cognizable under § 1983."  <u>Goldstein v. Galvin</u>, 719 F.3d 16, 24 (1st Cir. 2013) (<u>quoting</u> <u>Powell v. Alexander</u>, 391 F.3d 1, 16 (1st Cir. 2004)).  It is unclear whether <u>Bivens</u> extends to First Amendment retaliation claims.  <u>Air Sunshine, Inc.</u>, 663 F.3d at 35.  "Government actors offend the First Amendment when they retaliate against an individual for constitutionally protected speech." <u>Goldstein</u>, 719 F.3d at 30 (<u>quoting</u> <u>González-Droz v. González-Colón</u>, 660 F.3d 1, 16 (1st Cir. 2011)).  Retaliation claims require a two-part showing: first, "the plaintiff must show that his conduct was in fact constitutionally protected," and, second, the plaintiff must show that "the plaintiff's conduct was a 'substantial' or 'motivating' factor in bringing about the allegedly retaliatory action."  <u>Id.</u>  In this case, Plaintiff alleges that it was only after Wyatt officials learned that he was writing to the media to complain about his pretrial detention and the CFDFC that he was instructed to stop labeling his mail as "Legal Mail" and that, he believes, he was instructed to cease labeling his mail in this manner in retaliation for this conduct.  (Document No. 1, p. 3-4, 30, 35).  These allegations are sufficient to state a claim for relief on the ground that Wyatt officials retaliated against Plaintiff for exercising his First Amendment rights.

The Court notes that it expresses no opinion at this time on the likelihood that Plaintiff will ultimately prevail on his claims.  Under either of the two standards that may apply to assess Plaintiff's First Amendment claims, the standard enunciated in <u>Turner v. Safley</u>, 482 U.S. 78, 89-90 (1987), and the standard articulated in <u>Procunier v. Martinez</u>, 416 U.S. 396, 408-409, 416 (1974),

overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989), the challenged policies

of the CFDFC may be upheld if they are sufficiently related to a valid penological or governmental

interest.  At this early stage, however, it would be inappropriate for this Court to speculate as to the

interests served by the challenged policies; rather, this analysis, which concerns the merits of

Plaintiff's claims and not the sufficiency of Plaintiff's Complaint, is more properly conducted at a

later stage of the proceedings, after the prison-administration Defendants have responded to the

Complaint and themselves articulated the interests underlying the challenged policies.  See Barrett

v. Belleque, 544 F.3d 1060, 1062 (9th Cir. 2008) (per curiam); Brown v. Saline Cnty. Jail, 303 F.

App'x 678, 684 (10th Cir. 2008); Cranford v. Bayer, 147 F. App'x 947, 948 (11th Cir. 2005); Shakur

v. Selsky, 391 F.3d 106, 114-115 (2nd Cir. 2004).

      For these reasons, I find that Plaintiff's Complaint sufficiently states a claim upon which

relief may be granted to clear this preliminary screening hurdle – namely, a claimed First

Amendment violation and a retaliation claim – and is not legally frivolous.  Therefore, the

Complaint should not be dismissed at this preliminary screening stage.

### B.    Plaintiff Should be Ordered to Amend his Complaint

      Although dismissal of the Complaint under Sections 1915(e)(2)(B) and 1915A would not

be proper, it fails to clearly delineate each of Plaintiff's claims or state the legal foundation upon

which each claim is based.  Plaintiff should be required to amend his Complaint in order to cure

these deficiencies.  See Water Keeper Alliance v. U.S. Dep't of Defense,199 F.R.D. 445, 445

(D.P.R. 2001) (district court sua sponte ordered plaintiffs to amend complaint).

      This Court has the sua sponte authority to order Plaintiff to make a more definite statement

of his claim(s).  See Guilbeault v. R.J. Reynolds Tobacco Co., No. CIV A 98-035L, 1998 WL

919117, *2 (D.R.I. July 24, 1998) ("[C]ourts will occasionally order a more definite statement sua sponte, which they have the freedom to do." (quoting 2 James Wm. Moore, et al., Moore's Federal Practice § 12.36[1] (3d ed.1998))); see also Thomas v. Indep. Twp., 463 F.3d 285, 301-302 (3rd Cir. 2006); Fikes v. City of Daphne, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996); Reed v. Jones, 483 F.2d 77, 79 (5th Cir. 1973); cf. Carter v. Newland, 441 F. Supp. 2d 208, 214 (D. Mass. 2006) ("When a complaint pleads a viable legal theory but is so unclear that the opposing party cannot respond to the complaint or frame an answer, a court has the option of converting, sua sponte, a motion made pursuant to Fed. R. Civ. P. 12(b)(6) to a motion for a more definite statement under Fed. R. Civ. P. 12(e)."). Ordering a more definite statement is particularly appropriate "where, as here, the plaintiff is proceeding pro se and the parties are unable to engage in discovery until they are capable of identifying the specific claims against the specific individuals." Carter, 441 F. Supp. 2d at 214 (emphasis added); see also Hilska v. Jones, 217 F.R.D. 16, 25 (D.D.C. 2003); cf. Watson v. Ault, 525 F.2d 886, 892 (11th Cir. 1976) (adopting a practice for the determination of whether indigent pro se complaints are frivolous or malicious under Section 1915 under which, after the complaint is filed, the district court may require the plaintiff "to respond to [a form] questionnaire as a necessary pleading auxiliary, in the nature of a motion for more definite statement, Rule 12(e), Fed. R. Civ. P., in order that the court may assess the factual and legal bases of the claim asserted").

A court has the inherent discretion to order a more definite statement where it is left to guess the legal foundation supporting a plaintiff's claims. See, e.g., McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996) ("[E]ven though a complaint is not defective for failure to designate the statute or other provision of law violated, the judge may in his discretion, in response to a motion for more definite statement under Federal Rule of Civil Procedure 12(e), require such detail as may be

-10-

appropriate in the particular case...."); Holbrook v. Castle Key Ins. Co., 405 F. App'x 459, 460-461

(11th Cir. 2010) ("Although [the plaintiff] referenced many people and many legal terms, she did not

describe how each defendant injured her or point to the laws under which she was asserting a cause

of action....Thus, we cannot say that the district court abused its discretion in ordering [the plaintiff]

to file a more comprehensible complaint."); Williams v. United Credit Plan of Chalmette, Inc., 526

F.2d 713, 714 (5th Cir. 1976) ("Pretrial procedures such as summary judgment (Fed. R. Civ. P. 56)

and the motion for a more definite statement (Fed. R. Civ. P. 12(e)) are the appropriate devices to

narrow the issues and disclose the boundaries of the claim and defense."); Stoneback v. ArtsQuest,

C.A. No. 12-3286, 2012 WL 4963624, *11 (E.D. Pa. Oct. 17, 2012); Carter, 441 F. Supp. 2d at 214

(ordering more definite statement so that plaintiff could state whether his claims were being brought

against defendants in their official or individual capacities); Hearne v. Welch & Allan, M.D., P.A.,

No. CV 05–236–S–EJL, 2006 WL 22184, *3 (D. Idaho Jan. 4, 2006) (requiring plaintiff "to amend

the [c]omplaint as to the retaliation claim to designate the correct statute or other provision of law

violated."); Hilska, 217 F.R.D. at 25 ("Because the court will not speculate as to the plaintiff's

intended claims, the court will allow the plaintiff to clarify his claims" through a more definite

statement).  Here, because Plaintiff has failed to identify the legal basis upon which his claims are

based, the Court finds that, requiring amendment in order to allow the Plaintiff an opportunity to

articulate the legal foundation of his claims, is appropriate.

As I am ordering Plaintiff to amend his Complaint, there are at least two other deficiencies

in the Complaint that should be addressed.  First, the Complaint is lacking in factual detail in some

crucial respects.  Many of the allegations in the Complaint are vague; the Complaint alleges that

Plaintiff was informed of the challenged CFDFC policies, but it does not state, apart from two

isolated references to the Warden and Deputy Warden, who informed Plaintiff, when he was told, or how.  (See, e.g, Document No. 1, p. 3, ¶ 12 ("Plaintiff was instructed..."); id. ¶ 13 ("Plaintiff was further told..."); id. p. 4, ¶ 19 ("The Facility refused..."); id. p. 5, ¶ 29 ("[T]he Facility was unwilling to research..."); id. ¶ 30 ("[T]he Facility...instructed the Plaintiff..."); id. p. 6, ¶ 43 ("The [unspecified] Defendant refused to provide Plaintiff..."); id. ¶ 45 ("Plaintiff asked to use a word processor and was denied by [unspecified] Defendant.")).  Although this Court acknowledges Plaintiff's assertion that he needs discovery to determine the identities of the CFDFC's employees who "ordered the actions that [allegedly] interfered with Plaintiff's First Amend[ment] right[s]," id. p. 1, ¶ 5, in amending his Complaint, Plaintiff should, to the extent reasonably possible, endeavor to provide more factual detail of approximately when employees of the CFDFC informed him of the challenged policies and to offer some description of who those employees were and the method of the communication.

Second, Rule 10(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence...must be stated in a separate count."  As mentioned above, Plaintiff's Complaint appears to challenge several policies of the CFDFC on First Amendment grounds.  I find that stating each claim in separate counts would promote clarity.  Furthermore, it appears, although it is not entirely clear from Plaintiff's Complaint, that the CFDFC's policies concerning "Legal Mail" and "Personal Mail," inmate access to a telephone directory or word processor, and inmate access to the Internet and email are separate and distinct from one another.  Therefore, the requirements of Rule 10(b) are

triggered in this case, and Plaintiff should organize his distinct claims into separate counts in his Amended Complaint.[2]

**Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Motion to Proceed IFP be GRANTED but that Plaintiff be ORDERED to AMEND his Complaint within thirty (30) days in order to more clearly delineate each of his distinct claims into separately numbered counts, to state the legal foundation upon which each claim is based and to provide additional factual detail about the communications from representatives of the CFDFC that he is challenging in this case.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/  Lincoln D. Almond_____
LINCOLN D. ALMOND
United States Magistrate Judge
September 18, 2013

---

[2]  Although Plaintiff seeks compensatory and punitive damages (Document No. 1, p. 10) and Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) provide for dismissal of a complaint filed by an indigent pro se plaintiff when the complaint "seeks monetary relief from a defendant who is immune from such relief," the present uncertainty surrounding the legal basis for Plaintiff's claims and the identity of the individuals being sued makes it impossible to determine with any degree of confidence whether the portion of the Complaint seeking monetary relief should be dismissed on this ground.  I therefore express no opinion on this matter and leave the issue of immunity for resolution on a more developed record.